**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DIANE ELIZABETH HERRON,

                Plaintiff,

vs.                                        Case No.  3:10-cv-333-J-JRK

MICHAEL ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

      Diane Elizabeth Herron ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's final decision denying her claims for disability insurance benefits ("DIB") and

supplemental security income ("SSI").  Plaintiff first applied for benefits on January 2, 2008

alleging a disability onset date of January 25, 2007.  Transcript of Administrative Proceedings

(Doc. No. 6; "Tr.") at 10.  The application was denied initially on May 8, 2008, Tr. at 60-65, and

was denied upon reconsideration on September 19, 2008, Tr. at 67-70.  On October 1, 2008,

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at 71.  After

holding a hearing on November 12, 2009, Tr. at 31-49, the ALJ issued a Decision on December

15, 2009 finding Plaintiff not disabled from January 25, 2007 through the date of Decision, Tr.

at 10-23.  Plaintiff sought review of the ALJ's Decision, Tr. at 4, and on March 9, 2010, the

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 8); Order of Reference (Doc. No. 9), entered July 7, 2010.

Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's written Decision the final decision of the Commissioner.   On April 21, 2010, this action was commenced under 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), by the timely filing of the Complaint (Doc. No. 1) seeking review of the Commissioner's final decision.   The available administrative remedies have been exhausted, and the case is properly before the Court.

Three issues are raised on appeal: (1) whether the ALJ properly considered and weighed the complete opinions of Plaintiff's treating and examining physicians; (2) whether the ALJ properly discredited Plaintiff's subjective complaints of pain; and (3) whether the ALJ's hypothetical question to the vocational expert ("VE") included accurate limitations.   For the reasons explained herein, the undersigned concludes the Commissioner's final decision is due to be affirmed.

## II.  The  ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520 and 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ performed the required five-step sequential analysis.  At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since January 25, 2007, the alleged onset date."  Tr. at 12.  At step two, the ALJ found Plaintiff suffers from "the following severe impairments: degenerative disc disease of the spine, degenerative joint disease of the right shoulder and hip, hypertension and diabetes mellitus."  Tr. at 13.  The ALJ noted Plaintiff "was diagnosed with a depressive disorder (NOS) . . . in March 2008," but the ALJ concluded Plaintiff's "alleged depression does not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore non-severe."  Tr. at 13.  At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ."  Tr. at 14.  The ALJ determined Plaintiff has the following residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] requires a sit/stand option and must avoid climbing ladders, unprotected heights, the operation of heavy moving machinery and unusual stress. [Plaintiff] can occasionally bend, crouch, kneel, stoop, squat and crawl.  In addition, [Plaintiff] has a 10 pound maximum weight lifting restriction and must avoid the push-pull of arm controls and overhead reaching. [Plaintiff] is further limited from the repetitive twisting (i.e. side-to-side movement) of the neck.

Tr. at 15.  At step four, the ALJ found Plaintiff "is unable to perform any past relevant work."  Tr. at 21.  Then, at step five, the ALJ determined Plaintiff can perform the following jobs, which exist in significant numbers in the national economy: "Addresser," "Doc. Preparer/Scanning,"

and "Ticket Taker." Tr. at 22. The ALJ concluded Plaintiff was not under a disability[2] from January 25, 2007 through the date of the Decision. Tr. at 23.

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence'[.]" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

---

[2]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

## IV.  Discussion

There are three issues to be resolved.  Plaintiff alleges the ALJ "failed to consider the complete opinions of Plaintiff's treating and examining physicians . . . as well as the totality of [P]laintiff's testimony."  See Memorandum in Opposition to the Commissioner's Decision (Doc. No. 11; "Pl.'s Mem."), filed August 30, 2010, at 1-2.  The undersigned construes this statement as two separate issues.  First, whether the ALJ properly considered the opinions of Plaintiff's treating and examining physicians, including providing or explaining the weight given to each opinion.  Second, whether the ALJ properly discredited Plaintiff's subjective complaints of pain.  The third issue Plaintiff raises is whether the ALJ's failure to "include appropriate psychiatric, psychological, or physical limitations" in the hypothetical to the VE constitutes reversible error.  Pl.'s Mem. at 2.  Each issue is addressed in turn.

### A.  Opinions of Plaintiff's Physicians

Plaintiff contends the ALJ erred by "not giving proper weight to the complete opinions of [P]laintiff's treating physicians . . . ."  Id. at 9.  Plaintiff alleges a disability onset date of January 25, 2007, Tr. at 10, although Plaintiff suffered two work-related injuries, with the first occurring in 1997, Tr. at 575, and the second in 2007, Tr. at 411.  See Pl.'s Mem. at 3.  To adequately address Plaintiff's contentions, it is necessary to fully summarize Plaintiff's medical history, including the opinions of her treating and examining physicians.

Plaintiff's first work-related injury occurred on September 4, 1997 while Plaintiff was working as a "customer service/loader at Lowe's."  Tr. at 575.  On June 1, 1998, Plaintiff saw Howard Weiss, D.O.  Tr. at 575-78.  Plaintiff complained of "[l]eft buttock and thigh pain," "[l]eft arm pain (shoulder to forearm)," and "[l]ow back pain," and she reported that she suffered

"reinjuries while working full duty on" September 20, 1997 and March 4, 2008.  Tr. at 575.  Dr.

Weiss concluded Plaintiff's status was as follows:

> [Plaintiff] can work a sedentary modified duty work level, working an 8-hour
> work day with a maximum lifting of 10 pounds, changing positions hourly, no
> frequent bending or twisting.  [Plaintiff] was instructed to use ice and heat as
> needed and to do a basic home exercise stretching and aerobic walking
> program.

Tr. at 578.  Dr. Weiss also indicated Plaintiff's condition did not render a surgical work up and

Plaintiff would not "be a good surgical candidate in that she is a smoker and is obese."  Tr. at

578.

On May 4, 1998, Chaim Rogozinski, M.D., an orthopedic surgeon, saw Plaintiff, Tr. at

455-60, and summarized Plaintiff's then-current conditions, including the opinions of all the

physicians she had seen up to that point, Tr. at 458.  Dr. Rogozinski noted that Plaintiff "ha[d]

continued to work since her injury at full duty."  Tr. at 457.  Based on Dr. Rogozinski's

examination of Plaintiff, he determined she was "temporarily totally disabled" ("TTD").  Tr. at

456.

Plaintiff's second work-related injury occurred on January 25, 2007, her alleged onset

date, while she was working "as a clerk at Linens and Things."  Tr. at 411.  Plaintiff saw Dr.

Rogozinski on May 9, 2007, and her chief complaints were "neck pain, bilateral arm pain, and

right shoulder pain."  Tr. at 411.  As a result of this visit, Dr. Rogozinski diagnosed Plaintiff with

"Right C5-C6 herniated nucleus pulposus without myelopathy" and "Right C5-6 degenerative

spondylolisthesis."  Tr. at 408-11.  Dr. Rogozinski determined Plaintiff was TTD.  Tr. at 408.

Dr. Rogozinski noted that "[a] preexisting condition was not present" and "that [Plaintiff's]

present complaints are causally related to the injury on 1/25/2007."  Tr. at 408.

On May 14, 2007, Dr. Rogozinski ordered a "right C6 nerve root block" and again noted Plaintiff was TTD.  Tr. at 450.  Plaintiff underwent the nerve root block and "tolerated the procedure very well." Tr. at 446.  Thereafter, on June 29, 2007, Dr. Rogozinski noted Plaintiff's "complaints of neck pain, and right shoulder pain are resolved." Tr. at 415.  He also concluded Plaintiff could "perform regular duties."  Tr. at 414.

On July 13, 2007, Dr. Rogozinski indicated Plaintiff's "complaint of neck pain [wa]s unchanged. The complaints of bilateral trapezial pain and bilateral arm pain [we]re worse." Tr. at 425.  Plaintiff and Dr. Rogozinski discussed an "anterior cervical diskectomy," and Dr. Rogozinski indicated Plaintiff "would like to proceed with surgery."  Tr. at 423, 424.  Dr. Rogozinski also noted he would "see [Plaintiff] back in three weeks and she must be smoke-free."  Tr. at 424.  Finally, Dr. Rogozinski concluded Plaintiff could "perform regular duties." Tr. at 423.

Two weeks later, on July 27, 2007, Plaintiff had an appointment with Dr. Rogozinski at his request.  Tr. at 421.  Dr. Rogozinski noted Plaintiff's "complaint of neck and trapezial pain [wa]s worse."  Tr. at 420.  However, he also indicated "that [Plaintiff] ha[d] become a difficult management problem and that [he] no longer want[ed] to treat her." Tr. at 420.  Dr. Rogozinski noted Plaintiff had "not quit smoking," had "generated an inordinate number of phone calls several times a week," and she already was scheduled "for a second opinion to be performed on 8/3/2007." Tr. at 420, 421.  He further concluded Plaintiff could "perform regular duties." Tr. at 420.

Plaintiff then went to a neurosurgeon, John Boggs, M.D., who first saw Plaintiff on August 3, 2007.  Tr. at 562.  He indicated Plaintiff "had a prior history of a low back injury but

no prior neck problems."  Tr. at 562.  Regarding Plaintiff's status, Dr. Boggs opined,

> [Plaintiff's] regular job [wa]s fairly heavy unloading stock. Dr. Rogozinski returned [Plaintiff] to full duty without restrictions on 07/08/07 despite recommending a surgical approach to her problem. [Plaintiff], after that time, was unable to do the job.  Her boss sent her home on 07/26/07 instructing her not to return to the job unless she could work without restrictions.

Tr. at 562.  Contrary to Dr. Rogozinski's approach, Dr. Boggs noted Plaintiff did "not have [any]

clear cut surgical indications."  Tr. at 563.  Also, Plaintiff "exhibit[ed] no neurological deficit at

the present time, nor any evidence of myelopathy."  Tr. at 563.  Dr. Boggs noted that Plaintiff's

"long-term prognosis [wa]s not good for return to her heavy job . . . [but] she would be capable

of [a] light duty job of no lifting over 10-lbs, [and] no working above her head."  Tr. at 563.  Dr.

Boggs directed Plaintiff to undergo physical therapy, and Dr. Boggs planned a "gradual

reduction of pain medication with the intent of giving [Plaintiff a] maximal chance at

conservative improvement."  Tr. at 563.

Dr. Boggs next saw Plaintiff on September 7, 2007.  Tr. at 559.  At that point, Plaintiff

had almost completed her physical therapy course and reported to Dr. Boggs that the therapy

"help[ed] her at the time she [wa]s in therapy, but there [wa]s no lasting relief from it."  Tr. at

559.  Dr. Boggs recommended "the use of a [Transcutaneous Electrical Nerve Stimulation]

unit" and "request[ed] authorization to proceed with a series of three cervical facet injections."

Tr. at 559.  Dr. Boggs cleared Plaintiff "to do a light duty job with no lifting over 15-lbs."  Tr. at

559.

Plaintiff completed her physical therapy course "and also a series of three cervical facet

injections."[3]  Tr. at 558.  During Plaintiff's visit with Dr. Boggs on November 30, 2007, Plaintiff

reported the cervical facet injections gave "her relief for approximately two weeks."  Tr. at 558.

Dr. Boggs opined that Plaintiff was "at maximum medical improvement . . . [and] she [wa]s not

a surgical candidate."  Tr. at 558.  Dr. Boggs believed,

> [Plaintiff wa]s capable of performing a light duty job.  Her permanent restrictions
> are no lifting over 15-lbs.  No prolonged stooping or bending.  Must be able to
> shift positions on a frequent and regular basis. [Plaintiff's] diagnosis is multiple
> level cervical spondylitic changes at C4-5, C5-6 and C6-7 brought out and made
> symptomatic by injury that she sustained on 01-25-07.   Her permanent
> impairment rating based on the 1996 Florida Uniform Permanent rating
> schedule is 6%.

Tr. at 558.

On January 4, 2008, Dr. Boggs noted that "[Plaintiff wa]s having so much pain . . . she

[wa]s not employable," and he ordered an MRI scan of Plaintiff's left shoulder because her pain

was "more localized in the back of [her] left shoulder and radiate[d] down into the bicep area."

Tr. at 557.  Dr. Boggs indicated during Plaintiff's February 8, 2008 visit that Plaintiff's "MRI

scan was abnormal but since her symptoms have largely subsided nothing further needs to

be done other than for her to continue a range of motion."  Tr. at 550.  Dr. Boggs believed

Plaintiff was "at Maximum Medical Improvement."  Tr. at 550.  Dr. Boggs also indicated he did

"not anticipate that [Plaintiff's] symptomatology will improve with time."  Tr. at 550.

On June 16, 2008, Dr. Boggs opined Plaintiff's "condition remain[ed] about the same"

and her work status was "[a]s before, light duty." Tr. at 549.  Plaintiff reported she was not

working.  Tr. at 549.

---

[3]      Plaintiff received the three cervical facet injections on September 14, 2007, September
28, 2007, and October 12, 2007.  Tr. at 554-56.

On October 6, 2008, Plaintiff told Dr. Boggs "she had a flare up of her neck pain that [wa]s considerably worse than it had been . . . [and] she [wa]s having to take a little bit more medication than usual." Tr. at 548. As for treatment, Dr. Boggs recommended that Plaintiff receive "a cervical facet injection" because they "have helped her get through times when she [wa]s having increased pain." Tr. at 548.

While Plaintiff was under Dr. Boggs's care, she went for a psychological evaluation on March 19, 2008 with Lynda Walls, Ph.D. Tr. at 479. Dr. Walls's notes reflect that Plaintiff reported "significant symptoms of depression, including dysphoric moods, crying spells ([Plaintiff] was silently tearful throughout most of this session), feelings of guilt, hopelessness, loss of usual interest, diminished self-esteem, and diminished sense of pleasure." Tr. at 480. Dr. Walls also indicated Plaintiff's attention and concentration was "[w]ithin normal limits" and concluded that Plaintiff "appear[ed] to be capable of following, understanding, and remembering simple instructions and directions[,] . . . of performing simple tasks independently[,] . . . [and] of maintaining attention and concentration for simple tasks. She cannot regularly attend to a routine and maintain a schedule due to chronic pain." Tr. at 481, 482. Dr. Walls diagnosed Plaintiff with "[d]epressive disorder, NOS" and "recommended that [Plaintiff] begin psychological and psychiatric" treatment. Tr. at 482.

Additionally, the record includes two Physical Residual Functional Capacity Assessments. Tr. at 506-13, 534-41. Dorothy Uphaus completed a Physical Residual Functional Capacity Assessment on May 7, 2008, see Tr. at 506-13, in which she indicated that Plaintiff's "allegations are found to be partially credible" because "[t]he medical findings do[] not support such severe limitations" as Plaintiff alleged. Tr. at 511. Donald Morford, M.D.

-10-

completed his assessment on September 17, 2008 and concluded, similarly to Ms. Uphaus, that Plaintiff's "symptoms and her complaints appear to be slightly exaggerated when compared to the objective findings."  Tr. at 539.

The record also includes two Psychiatric Review Technique Forms ("PRTF").  See Tr. at 484-97, 514-27.  Steven Wise, Psy.D. completed a PRTF on April 1, 2008, Tr. at 484-97, and Martha Putney, Ph.D. completed a PRTF on July 29, 2008, Tr. at 514-27.  Both concluded Plaintiff had no restrictions of activities of daily living or episodes of decompensation, and only mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.  Tr. at 494, 524.  Dr. Putney also concluded Plaintiff "is able to work as her physical limitations permit."  Tr. at 526.

Plaintiff also saw Lynn Harper-Nimock, M.D. on April 29, 2008.  See Tr. at 499-505.  Dr. Harper-Nimock recognized that Plaintiff suffered a work-related injury in 1997 and a second work-related injury in 2007.  Tr. at 499.  Dr. Harper-Nimock's diagnoses included degenerative disc disease, degenerative joint disease, hypertension, non-insulin dependent diabetes, nicotine dependency, and obesity.  Tr. at 501.  Dr. Harper-Nimock also indicated Plaintiff's prognosis was fair.  Tr. at 501.

On August 14, 2008, Plaintiff had a consultative evaluation with Ciceron Lazo, M.D. who indicated Plaintiff "appear[ed] to be in physical distress at the time of [the] examination."  Tr. at 529.  Dr. Lazo's assessment of Plaintiff's condition included degenerative disc disease, right shoulder tendonitis, non-insulin dependent diabetes, severe hypertension under poor control, and left carpal tunnel syndrome with mild symptoms.  Tr. at 530.

-11-

The Regulations establish a "hierarchy" among medical opinions[4] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of nonexamining physicians[5;] treating physicians'[6] [opinions] are given more weight than [nontreating physicians[7];] and the opinions of specialists are given more weight on issues within the area of expertise than those of nonspecialists." McNamee v. Soc. Sec. Admin., 162 F. App'x 919, 923 (11th Cir. 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078,

---

[4]      "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s)," including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment(s). 20 C.F.R. § 404.1527(a)(2).

[5]      A nonexamining physician is a "physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." 20 C.F.R. § 404.1502.

[6]      A treating physician is a "physician, psychologist, or other acceptable medical source who provides . . . medical treatment or evaluation [to the claimant] and who has, or has had, an ongoing treatment relationship with [the claimant,]" as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. 20 C.F.R. § 404.1502.

[7]      A nontreating physician is a "physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

1084 (5th Cir. Unit B 1981) (citation omitted); <u>see also</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  <u>Phillips</u>, 357 F.3d at 1240; <u>see also</u> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583-84 (11th Cir. 1991); <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).  The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor."  <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279-80 (11th Cir. 1987); <u>see also</u> <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986).

Here, the ALJ fully summarized Plaintiff's medical history, and then he provided his reasoning for the specified weights given to each of the opinions of Plaintiff's physicians.  Tr. at 15-21.  The ALJ gave "the greatest weight to the modified light work restrictions offered by Dr. Boggs, [Plaintiff's] treating neuro-surgeon[,] . . . finding [Dr. Boggs's opinion] to be consistent with the overall record evidence."  Tr. at 19.  The ALJ specifically considered the factors listed above and recognized that Dr. Boggs "is a medical specialist who has treated [Plaintiff] for several years, is familiar with her medical condition, including pain complaints and has continually found [Plaintiff] capable of modified light work duty."  Tr. at 20; <u>see also</u> 20

C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); 20 C.F.R. §§ 404.1527(f), 416.927(f).  Plaintiff contends that Dr. Boggs did not consider her first work-related injury.  Although Dr. Boggs did not specifically treat Plaintiff for her first work-related injury, he indicated during his August 3, 2007 examination of Plaintiff that she "had a prior history of a low back injury."  Tr. at 562.  Dr. Boggs's notation indicates he was aware of Plaintiff's first work-related injury.  The ALJ's conclusion to accord Dr. Boggs's opinion great weight is supported by substantial evidence.[8]

Moreover, the ALJ "accorded considerable (but less) weight to the findings of modified light work duty offered more remotely by Dr. Howard Weiss, a specialist in physical and rehabilitative medicine who evaluated" Plaintiff in 1998 after her first work-related injury.  Tr. at 19.  The ALJ recognized that Dr. Weiss's conclusions and work limitations were generally consistent with Dr. Boggs's conclusions and work limitations.  Tr. at 19.  Despite Plaintiff's contentions to the contrary, the symptoms and effects of Plaintiff's first work-related injury were adequately considered.  The ALJ's decision to afford "considerable (but less) weight" to Dr. Weiss's opinion is supported by substantial evidence.

Additionally, the ALJ found good cause to reject Dr. Walls's opinion that Plaintiff "would be unable to regularly attend to a routine and maintain a schedule secondary to chronic pain."  Tr. at 20.  The ALJ noted that "Dr. Walls is a psychologist who saw [Plaintiff] once."  Tr. at 20.  The ALJ found Dr. Walls's conclusion regarding Plaintiff's condition "inconsistent with the totality of the record evidence" as well as "the State agency psychological consultants who reviewed the record [and who] concluded that [Plaintiff's] depressive disorder [i]s not a severe

---

[8]    Plaintiff's contentions regarding the discrepancies between Dr. Boggs's work restrictions and the ALJ's findings, including the ALJ's hypothetical to the VE, are discussed in detail infra Part IV.C.

mental impairment." Tr. at 21.  The ALJ specifically considered the necessary factors in rejecting Dr. Walls's conclusions by indicating that Dr. Walls, a psychologist, only saw Plaintiff once, and Dr. Walls's conclusions contradicted Dr. Boggs's opinion and the objective medical evidence in the record.  Tr. at 20; see also 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); 20 C.F.R. §§ 404.1527(f), 416.927(f).  Accordingly, the ALJ clearly articulated reasons showing good cause to reject Dr. Walls's opinion, and such reasons are supported by substantial evidence.

The ALJ properly considered the complete opinions of Plaintiff's treating and examining physicians, and the ALJ adequately provided and explained the weight given to each physicians' opinions.  The ALJ's reasons are supported by substantial evidence.  Therefore, the undersigned finds no error in the ALJ's Decision regarding the weight given to the opinions of Plaintiff's treating and examining physicians.

### B.  Plaintiff's Subjective Complaints of Pain

Plaintiff argues the ALJ "failed to consider the . . . totality of [P]laintiff's testimony."  Pl.'s Mem. at 1-2.  To support this argument, Plaintiff summarizes her testimony during the hearing regarding her daily activities and how she has "to take frequent breaks in her recliner to ease the pain in her cervical and low back area."  Id. at 10.  As noted supra, the undersigned construes Plaintiff's statements as challenging the ALJ's discrediting of Plaintiff's subjective complaints of pain.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b)

that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).   "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.  Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence").

　　　"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as:  (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)); see also 20 C.F.R. § 416.929(c)(3)(i)-(vi) (providing the same).  However, a plaintiff's ability to participate in daily activities for a short duration does not preclude a finding of disability. See Lewis, 125 F.3d at 1441 (finding that participation in everyday activities "such as housework and fishing" is insufficient to disqualify "a claimant from disability").

Here, the ALJ considered Plaintiff's testimony regarding her first work-related injury in 1997 and her second work-related injury in 2007.  Tr. at 15, 16.  The ALJ also summarized Plaintiff's subjective complaints of pain, specifically noting that Plaintiff testified about her daily activities and routine and that "she did activities taking breaks of approximate 15-30 minute duration to relieve pain[, and] . . . she took such breaks 8-10 times a day."  Tr. at 16.  The ALJ concluded Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."  Tr. at 16.  The ALJ then summarized in detail Plaintiff's medical history and treatments.  Tr. at 15-21.

Regarding Plaintiff's testimony, the ALJ concluded,

> [Plaintiff's] statements concerning her impairments and the impact they have on her ability to work are not entirely credible in light of the objective medical findings, degree of medical treatment received or required, and discrepancies between [Plaintiff's] assertions, other documentary evidence, and the reports and findings of treating, examining and non-examining sources.

Tr. at 20.  To support this conclusion, the ALJ gave explicit and adequate reasons for discrediting Plaintiff's testimony about her pain.  See Tr. at 20-21; Wilson, 284 F.3d at 1225.  First, the ALJ noted Plaintiff had "returned to work for a number of years after being placed on modified light work duty restrictions following" her first work-related injury.  Tr. at 20; see also Tr. at 457, 458, 562, 575.  Additionally, the ALJ observed that Plaintiff "has (again) been found capable of modified light work duty by her doctor following" the second work-related injury, but Plaintiff "has not returned to work."  Tr. at 20; see also Tr. at 562-63.  Second, the ALJ indicated he found "it reasonable to assume that if [Plaintiff's] pain were as severe as she

-17-

claimed, she would have stopped smoking and undergone surgery" when recommended to her by Dr. Rogozinski.[9]  Tr. at 20; see also Tr. at 423-24.  In support of this reasoning, the ALJ relied on the fact that Dr. Boggs has "not found any surgical indication and [Plaintiff] has been treated conservatively with pain management."  Tr. at 20; see also Tr. at 563.  Third, Plaintiff indicated "that her medication [i]s effective with no significant side-effects other than some difficulty sleeping," and "there is no evidence in the record of [Plaintiff] reporting any medication side-effects to her doctors or requesting that her medication be changed."  Tr. at 20; see also Tr. at 33, 168.  Fourth, Plaintiff's "neurological examinations have been normal and there is no evidence of any severe spinal stenosis, disc herniation or neural compromise."  Tr. at 20; see also Tr. at 501, 530, 563.  Fifth, "[w]hile [Plaintiff] testified her hypertension [i]s uncontrolled because she [cannot] afford treatment, there is no evidence in the record of [Plaintiff] being denied treatment or being turned away from facilities which provide indigent care."  Tr. at 20.  The ALJ followed this same reasoning with regard to Plaintiff's blood pressure medication.  Tr. at 20.  Finally, the ALJ recognized that "there is no indication in the record of [Plaintiff] complaining of excessive tiredness or dizziness."  Tr. at 20.  The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably b[e] expected to cause some pain;" however, "the mere existence of pain, even chronically, does not require a finding that an individual cannot work and the fact that working may cause pain and discomfort does not mandate a finding of disability."  Tr. at 21.

---

[9]     The Court recognizes the evidence in the record is somewhat unclear as to why Dr. Rogozinski indicated Plaintiff was a surgical candidate and surgery was contemplated within three weeks, yet two weeks later discharged Plaintiff from his care.  See Tr. at 420-25.  However, the ALJ provided numerous other reasons as to why he discredited Plaintiff's subjective complaints of pain which the undersigned finds sufficient.

The ALJ gave explicit and adequate reasons for discrediting Plaintiff's testimony about her pain, see Wilson, 284 F.3d at 1225, and the reasons are supported by substantial evidence.  Therefore, the undersigned finds no error in the ALJ's findings regarding Plaintiff's subjective complaints of pain.

### C.  Hypothetical to the VE

Plaintiff argues the hypothetical posed to the VE was flawed because it did not include: (1) "any of the psychological/psychiatric limitations described by Dr. Walls;" or (2) the restrictions and limitations described by Dr. Boggs.  Pl.'s Mem. at 9, 10.

In the fifth step of the sequential evaluation process, an ALJ may pose a hypothetical question to a VE as part of his determination of whether the claimant can obtain work in the national economy.  See 20 C.F.R. § 416.920(a)-(f).  When the ALJ relies on the testimony of a VE, "the key inquiry shifts from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE."  Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished).  In determining an individual's RFC and later posing a hypothetical to a VE which includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8P, 1996 WL 374184 at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that, "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered

individually, is disabling") (internal quotation and citations omitted).  "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001).

First, Plaintiff argues the hypothetical posed to the VE did not include the limitations described by Dr. Walls.  Pl.'s Mem. at 9.  Despite Plaintiff's contention, the undersigned already found at supra Part IV.A the ALJ properly discredited Dr. Walls's opinion that Plaintiff "would be unable to regularly attend to a routine and maintain a schedule secondary to chronic pain," Tr. at 20.  Therefore, the ALJ was under no obligation to include in the hypothetical such limitations stemming from Dr. Walls's opinion.

Following her argument regarding Dr. Walls's opinion, Plaintiff contends the ALJ failed to include in the hypothetical Plaintiff's "psychological/psychiatric sequella of chronic pain." Pl.'s Mem. at 10.  The only documentation of possible psychological or psychiatric effects of Plaintiff's alleged pain in the record is Dr. Walls's opinion that Plaintiff suffers from "depressive disorder, NOS."  Tr. at 482.  To the extent Plaintiff's contention is that the ALJ did not include Plaintiff's depression in the hypothetical, this contention is unfounded.  Consistent with the requirements imposed on an ALJ, the ALJ did account for Plaintiff's depression in the hypothetical, even though the ALJ concluded Plaintiff's depression is not severe. The ALJ determined Plaintiff's depression is not severe because it "causes no more than 'mild' limitation," and Plaintiff has experienced "'no' episodes of decompensation which have been of extended duration."  Tr. at 14.  Additionally, the ALJ stated Plaintiff's "alleged depression

does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." Tr. at 13. The ALJ also noted that "[a]lthough [Plaintiff] testified she [i]s depressed, she . . . indicated she [i]s not being treated for this condition." Tr. at 21. The ALJ relied on the "State agency psychological consultants who reviewed the record" and "concluded that [Plaintiff's] depressive disorder [i]s not a severe mental impairment." Tr. at 21.

In evaluating a claimant's mental condition, the Regulations direct the use of the psychiatric review technique. See 20 C.F.R. §§ 404.1520a, 416.920a. The psychiatric review technique is embodied in the PRTF and is further described in the preface to section 12.00 of the listing of impairments. See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment using the criteria in "paragraph A" of the listings. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.[10] Next, the degree of functional limitation relating to such impairment is ascertained. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). In determining the degree of functional limitation resulting from a mental impairment, four "broad functional areas" in "paragraph B" of the listings are rated: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. The first three broad functional areas are rated using a five-point scale: none, mild, moderate, marked, and severe. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. If the criteria under

---

[10]     The medical findings associated with affective disorders, including depression, are listed in paragraph A of section 12.04. See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04.

paragraph B do not establish that the claimant is disabled, depending on the type of mental disorder, the criteria under "paragraph C" are considered.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.[11]

Next, if paragraph C does not establish that the claimant is disabled, the severity of the mental impairment is determined based on the degree of limitations in the four broad functional areas. See 20 C.F.R. §§ 404.1520a(d), 416.920a(d); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.  If the claimant is determined to have a severe mental impairment that does not meet or medically equal any of the impairments listed, then the claimant's RFC is assessed. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.  The ratings of the claimant's limitations in the four broad functional areas pursuant to the psychiatric review technique "are not an RFC assessment but are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4.  "The mental RFC assessment used at steps [four] and [five] of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the [listings]." Id.

---

[11]    For affective disorders, the paragraph C criteria are as follows: "Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:  1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication or continued need for such an arrangement."  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(c).

When making the more detailed assessment and itemizing the claimant's various functions in assessing RFC at steps four and five of the sequential evaluation process, "[n]onexertional capacity[[12]] must be expressed in terms of work-related functions." Id. at *6. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id.; see also 20 C.F.R. §§ 404.1545(c), 416.945(c); Pabon v. Barnhart, 273 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003).   The assessment of functional limitations resulting from mental impairments "is a complex and highly individualized process that requires [consideration of] multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).

Here, the ALJ found at step two that Plaintiff's depression is not severe.  Tr. at 13.  The ALJ further found Plaintiff has only mild limitation in daily living; social functioning; concentration, persistence, or pace; and no episodes of decompensation.[13]  Tr. at 13-14.  The

---

[12]    "Nonexertional capacity measures all work-related limitations and restrictions that do not depend on an individual's physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions."  SSR 96-8p, 1996 WL 374184, at *6.

[13]    The undersigned has considered the recent United States Court of Appeals for the Eleventh Circuit case in which the Eleventh Circuit, for the first time in a published opinion, addressed "whether a hypothetical question to a [VE] must specifically account for limitations in concentration, persistence, and pace identified during the Psychiatric Review Technique."  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011).  In Winschel, the ALJ concluded the plaintiff's "mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace," yet "the ALJ did not indicate that medical evidence suggested [the plaintiff's] ability to work was unaffected by this limitation, nor did [the ALJ] otherwise implicitly account for the limitation in the hypothetical."  Id. at 1181.  The Eleventh Circuit reversed and remanded with instructions to the ALJ to include the plaintiff's "moderate limitations in maintaining concentration, persistence, and pace" in the hypothetical.  Id.  Here, the ALJ expressly accounted for Plaintiff's mild degree of limitation in the functional limitation category

ALJ concluded Plaintiff's alleged depression is not being treated and "[n]o significant deficits [were] found in [Plaintiff's] attention, concentration or memory." Tr. at 21.  The ALJ recognized that "[n]either [Plaintiff] nor her counsel has suggested or alleged facts which establish the existence of an impairment, either singly or in combination, which meets or medically equals any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 14.

In assessing the RFC in his Decision, the ALJ performed the required translation of Plaintiff's limitations resulting from her mental impairment from the four broad functional areas to a work-related function: the need to "avoid unusual stress."  Tr. at 15.  This work-related function was also conveyed to the VE in the hypothetical.  Tr. at 44.  Plaintiff does not challenge whether the need to "avoid unusual stress" adequately accounts for her depression.

Furthermore, the ALJ explained he is "not persuaded that [Plaintiff] is unable to work due to any mental impairment."  Tr. at 21.  The ALJ reasoned that Plaintiff is not being treated for her depression, Tr. at 21, and the ALJ rejected the opinion of Dr. Walls, noting that Dr. Walls's consultative psychological evaluation "[i]s fairly benign."  Tr. at 21.  Therefore, the Court finds no error in the ALJ's formulation of the hypothetical with respect to Plaintiff's mild limitations resulting from her depression.

Plaintiff's second argument with regard to the hypothetical deals with the restrictions and limitations placed on Plaintiff by Dr. Boggs.  Pl.'s Mem. at 9.  Specifically, Plaintiff argues the ALJ's Decision "did not incorporate or include the complete opinions of Dr. Boggs with regard to restrictions and limitations" or "the additional permanent restrictions of no bending, stooping,

---

of "Difficulties in Maintaining Concentration, Persistence, or Pace."  Tr. at 494, 524.  The ALJ also included in the hypothetical that Plaintiff needed to "avoid unusual stress."  Tr. at 15.  As explained infra, this express inclusion of the need to "avoid unusual stress" satisfies the requirement that the ALJ include all Plaintiff's limitations in the hypothetical.

or working above the horizon." Id. (internal quotation and citations omitted).   The Commissioner contends, "Plaintiff failed to show that the minor discrepancies between Dr. Boggs'[s] opinion and the ALJ's RFC finding and hypothetical question were prejudicial to her claim."   Memorandum in Support of the Commissioner's Decision (Doc. No. 12; "Commissioner's Mem."), filed October 28, 2010, at 9.   In support of this argument, the Commissioner notes that "although the ALJ found that Plaintiff could occasionally bend and stoop, the ALJ correctly noted that the VE testified that even if the hypothetical person could perform no bending and no stooping, the person could still perform the jobs identified." Commissioner's Mem. at 8.

As noted by the Commissioner, Plaintiff's attorney asked the VE if the jobs identified by the VE would change if "two additional items of no bending and no stooping" were added to the ALJ's hypothetical.   Tr. at 47; see also Commissioner's Mem. at 8.   The VE responded, "No, . . . it wouldn't have any impact."   Tr. at 47.   Although the original hypothetical did not include these limitations, Plaintiff's attorney specifically inquired as to whether the VE's testimony would change if such limitations were added.   The VE concluded those limitations would have no effect on the jobs identified.   As such, the Court finds that even if there was an error in the hypothetical posed to the VE, such error was harmless.

## V. Conclusion

The Court has reviewed the entire file and finds substantial evidence to support the ALJ's Decision at all five steps of the sequential evaluation process.   In accordance with the foregoing, it is hereby

**ORDERED**:

1.      The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 15, 2011.


*James R. Klindt*

**JAMES R. KLINDT**
United States Magistrate Judge


jld
Copies to:
Counsel of Record